UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KLP ENTERPRISES, LLC,

    Plaintiff,

v.

THOMAS J. SASSANI,

    Defendant.

No. 3:17-cv-665 (MPS)

**ORDER ON MOTION FOR DEFAULT JUDGMENT AND SUMMARY JUDGMENT**

Plaintiff KLP Enterprises, LLC ("KLP") moves for default judgment and summary judgment against defendant Thomas J. Sassani ("Sassani") on KLP's claim for breach of a promissory note and on Sassani's six counterclaims against KLP. For the reasons discussed below, KLP's motion for default judgment and/or summary judgment (ECF No. 39) is GRANTED in part and DENIED in part.

**I.**     **Factual Background**

The Court assumes familiarity with the summary judgment record and sets forth a brief summary of the relevant facts below.

KLP is an investor in Zozi, a start-up online reservation, payment and customer management software and system used to book travel tours and activities. (ECF No. 39-11 ("Plaintiff's Local Rule 56(a)(1) Statement of Undisputed Material Facts" or "Pl.'s L.R. 56(a)1 Stmt.") at ¶ 10; ECF No. 49 ("Defendant's Local Rule 56(a)(2) Statement of Facts in Opposition to Plaintiff's Motion for Summary Judgment" or "Def.'s L.R. 56(a)2 Stmt.") at 4.). Sassani was a shareholder in Zozi and, until his termination on January 24, 2017, its CEO. (Def.'s L.R. 56(a)2 Stmt. at 13.) On or about April 11, 2016, KLP and Sassani entered into a Note, Pledge Agreement, and Security Agreement. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 1; Def.'s L.R. 56(a)2 Stmt. at 1.) Pursuant

to the terms of the Note, KLP made a loan to Sassani in the amount of $5.7 million. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 2; Def.'s L.R. 56(a)2 Stmt. at 1.)

The Note requires immediate prepayment of the entire amount due if an "Event of Default" occurs. (ECF No. 39-3, Declaration of Andrew Wingate ("Wingate Decl.") Ex. 1, §§ 3.2, 10.) Section 9 of the Note defines, *inter alia*, the following as an "Event of Default" triggering mandatory prepayment:

> 9.4 <u>Breach of Representation or Warranty</u>. Any financial statement, representation, warranty of certificate made or furnished by or on behalf of [Sassani] to [KLP] in connection with this Note or any Security Document or as inducement to [KLP] to make the Loan or enter into any Security Document, shall be false, incorrect, or incomplete in any material respect when made;
> [. . .]
> 9.8 <u>Material Adverse Effect</u>. There shall occur a change in the condition or affairs (financial or otherwise) of [Sassani] which change, in the reasonable good faith opinion of [KLP], would have a Material Adverse Effect on [Sassani].

(*Id.* at §§ 9.4, 9.8.) Section 20.10 defines a "Material Adverse Effect" as follows:

> 20.10 "<u>Material Adverse Effect</u>" means (a) with respect to any Person, a material adverse effect upon the business, operations, properties, assets or financial condition (financial or otherwise) of the Person, or (b) with respect to [Sassani], a material adverse effect on value of the Collateral (taken as a whole) or the ability of [Sassani] to perform [Sassani's] obligations under this Note or any of the Security Documents.

(*Id.* at § 20.10.) "Collateral" is defined by reference to the Security Agreement (*id.* at § 20.2), and included Sassani's preferred and common stock in Zozi and another company, Lux Research ("Lux"). (ECF No. 39-5, Wingate Decl. Ex. 3, at 17.)

Prior to entering into the Note and related agreements, Sassani had requested the loan from KLP in a March 31, 2016 email. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 14; Def.'s L.R. 56(a)2 at 6–7.) In the first paragraph of that email, Sassani wrote in relevant part:

> - **Performance Update:**
>   - **February outperformed even our revised estimate last week.** We ended with $198K in collected revenue, representing 3.3X YoY **growth vs. Feb 2015.**

2

- ARR incorporates our natural seasonality trends. It's simply collected revenue divided by the seasonal growth factor of a month. This means $198K/5.4% (Feb seasonal factor) represents an ARR of live and revenue $3.7M at end of Feb, and we have an additional $1.2M in the backlog, bringing total ARR is $4.9M ending Feb. Further, March outperformed as well and I'd expect that with new live revenue and additional backlog, our *total ARR today is closer to $5.3M ($1.1M higher than I stated in our slides last week).* The over performance is the result of higher Feb revenue the [sic] expected (increasing ARR) and more contracts closed in March.

(ECF No. 39-7, Wingate Decl. Ex. 5 (the "March 31, 2016 email") at 2 (emphasis added).) ARR stands for "Annualized Recurring Revenue" and is a key metric for a business with a subscription model, like Zozi. (Pl.'s L.R. 56(a)1 Stmt. at ¶¶ 12, 13; Def.'s L.R. 56(a)2 Stmt. at 5–6.) Subscription fees were included as part of ARR. (Pl.'s 56(a)1 Stmt. at ¶ 12; Def.'s 56(a)2 Stmt. at 5.) At that time, however, Zozi temporarily waived subscription fees for some of its clients, though the parties dispute to what degree, for how long, and who was responsible for waiving them. (Pl.'s L.R. 56(a)1 Stmt. at ¶¶ 11, 19; Def.'s L.R. 56(a)2 Stmt. at 5, 9.) Sassani still calculated these "Waived Fees" as part of Zozi's revenue and ARR. (Pl.'s 56(a)1 Stmt. at ¶ 20; Def.'s 56(a)2 Stmt. at 9.)

Further down in the March 31, 2016 email, Sassani requested the $5.7 million loan from KLP and summarized his proposed collateral, which totaled approximately $11.4M and included "$3M Lux Research" stock as well as various kinds of Zozi stock. (*See* Pl.'s L.R. 56(a)1 Stmt. at ¶¶ 16–17; Def.'s L.R. 56(a)2 at 7–8.) Sassani represented in the March 31, 2016 email that his shares in Lux were worth $3 million. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 24; Def.'s L.R. 56(a)2 at 11; *see also* ECF No. 39-7, Wingate Decl. Ex. 5 at 3.) Shortly thereafter, Lux was sold, and the amount paid for Sassani's shares was only $441,582.41. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 25; Def.'s L.R. 56(a)2 at 11; *see also* ECF No. 39-8, Wingate Decl. Ex. 6.)

## II.     Procedural Posture

KLP brought this action on April 21, 2017, alleging one count for breach of the Note based on numerous alleged "Events of Default" by Sassani. (ECF No. 1.) The parties conducted a Rule 26(f) planning conference and filed their report on August 7, 2017. (ECF No. 23.) After holding a Rule 16(b) conference, the Court set the discovery deadline as May 4, 2018, and the dispositive motions deadline as June 4, 2018. (ECF No. 28.). On September 12, 2017, Sassani filed various counterclaims against KLP, including counts for: (1) a declaration that Sassani did not breach the Note; (2) breach of the implied covenant of good faith and fair dealing by terminating Sassani as CEO in order to trigger an "Event of Default" under the Note and secure Sassani's voting rights associated with his pledged collateral; (3) tortious interference of contract by instructing its representative to terminate Sassani and other allegedly tortious conduct; (4) breach of fiduciary duty by advancing its own interests to the detriment of Sassani; (5) breach of a voting agreement that required Sassani's permission to sell Zozi; and (6) violations of the Uniform Commercial Code by refusing to release Sassani's Lux shares to him. (ECF No. 32 at ¶¶ 86–127.)

On January 10, 2018, however, Sassani's attorneys filed a motion to withdraw. (ECF No. 36.) The Court granted the motion on January 29, 2018 after Sassani failed to engage other counsel or file an appearance. (ECF No. 38.) KLP then filed this motion for default judgment and/or summary judgment on February 27, 2018. (ECF No. 39.) Sassani filed a *pro se* opposition, and KLP filed a reply. (ECF Nos. 41, 42.) On June 25, 2018, however, new counsel for Sassani appeared and filed a motion to file a substitute opposition, which the Court granted. (ECF Nos.

44, 45.) Sassani filed a substitute opposition and KLP filed its reply, which the Court treats (together with KLP's original motion) as the operative briefing. (ECF Nos. 47, 53.)[1]

## III. Discussion

### A. Default Judgment

KLP argues that the Court should enter default judgment against Sassani for his failure to file an appearance or engage substitute counsel. (ECF No. 39-1 at 5.). The Second Circuit explained the procedure for seeking default judgment under Fed. R. Civ. P. 55 in *New York v. Green*, 420 F.3d 99 (2d Cir. 2005):

> Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain a default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. See Fed.R.Civ.P. 55(b)(1). "In all other cases," Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

*Id.* at 104. KLP did not move for entry of default before moving for entry of default judgment under Fed. R. Civ. P. 55(b). Accordingly, default judgment is premature and any default by Sassani has since been cured by his counsel's subsequent appearance in the case.

### B. Summary Judgment

KLP moves for summary judgment on both its claim against Sassani for breach of the Note and on Sassani's counterclaims against it. (ECF No. 39 at 6–16.)

---

[1] As discussed below, however, Sassani is ordered to show cause within 14 days why he should not bear the costs of KLP's first reply brief, which appears to have been occasioned by his delay in seeking substitute counsel, together with his failure to ask for more time and/or to alert KLP's counsel that he intended to do so before KLP filed its first reply.

5

*1. Breach of Note*

KLP argues that it is entitled to summary judgment on its breach of note claim because Sassani represented in the March 31, 2016 email that (i) Zozi's ARR was over $5 million, without disclosing that his calculated ARR included waived subscription fees, and (ii) that the value of his Lux shares was $3 million, even though they were sold for only $441,582.41. (ECF No. 39-1 at 8-10.) KLP argues that both statements triggered a default because they each (a) breached the provision that Sassani make no "financial statement [or] representation" in connection with the Note or or as inducement to KLP to make the loan that is "false, incorrect, or incomplete in any material respect when made" and (b) constituted a "material adverse effect on value of the Collateral (taken as a whole)." (*Id.*; *see also* ECF No. 39-3, Wingate Decl. Ex. 1, §§ 9.4, 9.8, 20.10.) I disagree, because genuine disputes of material fact abound on each issue.

With respect to Sassani's calculation of ARR in the March 31, 2016 email, the genuine disputes of material fact include, but are not limited to:

- What portion of Zozi's income is derived from subscription fees such that any misstatement of subscription fees would make ARR false in "any material respect" or constitute a material adverse event regarding the Zozi stock pledged as collateral. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 11; Def.'s L.R. 56(a)2 Stmt. at 5, 15 ¶ 8.)

- What impact the inclusion of waived fees had on Zozi's total revenue such that the inclusion of waived fees in ARR would make ARR false in "any material respect" or constitute a material adverse event regarding the Zozi stock pledged as collateral. (Pl.'s L.R. 56(a)1 Stmt. at ¶¶ 19–21; Def.'s L.R. 56(a)2 Stmt. at 9–10, 17 ¶ 14.)

- How any misstatement of ARR affected Zozi's valuation as a company to make any ARR misstatement "material" or constitute a material adverse event regarding the Zozi stock pledged as collateral. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 13; Def.'s L.R. 56(a)2 Stmt. at 6; *see also* ECF No. 50, Declaration of Thomas J. Sassani ("Sassani Decl.") at ¶ 29.)

- Whether any specific component of Sassani's ARR calculation in the March 31, 2016 email incorporated waived fees *at all* and was therefore "false, incorrect, or incomplete" or affected the value of the Zozi stock pledged as collateral. (*Compare* Def.'s L.R. 56(a)2 Stmt. at 17–18 ¶ 17 *and* ECF No. 39-10, Declaration of Casey

6

("Woo Decl.") Ex. 1 at Row 28, Column Q (relying on same $198K actual revenue figure).)

- Whether the restated ARR Q1 2016 calculation of $2.3 million by Casey Woo, Zozi's former COO, is accurate. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 23; Def.'s L.R. 56(a)2 Stmt. at 11; *see also* ECF No. 39-10, Woo Decl., Ex. 1.)

- Whether KLP was induced to enter into the Note agreement "based on" the ARR Sassani calculated in his March 31, 2016 email such that any ARR misrepresentation would be subjectively "material" to KLP. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 18; Def.'s L.R. 56(a)2 Stmt. at 8–9.)

With respect to Sassani's estimation of the value of the Lux collateral as $3 million in the March 31, 2016 email, the genuine disputes of material fact include, but are not limited to:

- Whether Sassani's estimate of the value of his Lux shares as $3 million was false at the time the statement "was made," notwithstanding the subsequent drop in its ultimate sales price. (ECF No. 39-7, Wingate Decl. Ex. 5 at 3; *see* ECF No. 50, Sassani Decl. at ¶ 33.)

- Whether Sassani's statement in the March 31, 2016 email of Lux's recurring revenue, that Lux was "EBITDA profitable", or concerning the company's expected "exit ranges" over the next two to five years was "false, incorrect, or incomplete" at all. (ECF No. 39-7, Wingate Decl. Ex. 5 at 3.)

- Whether KLP-affiliated personnel independently investigated Lux to corroborate Sassani's estimated valuation such that any misstatement was not "material" or did not constitute a "material adverse event" based on the "reasonable good faith opinion of [KLP]." (ECF No. 50, Sassani Decl. at ¶ 33.)[2]

- Whether any misstatement in the value of Sassani's Lux shares constituted "a material adverse effect on value of the Collateral (taken as a whole)," *i.e.*, the approximately $11.4 million total collateral in KLP's good faith view. (ECF No. 39-1 at 12–13; ECF No. 53 at 8 (not addressing whether a drop in the value of the Lux collateral was material in KLP's subjective view).)

Because genuine disputes of material facts exist on both key aspects of KLP's motion, I DENY KLP's motion for summary judgment on its breach of note claim.[3]

---

[2] KLP argues that this evidence is "irrelevant" to the falsity of the statement or subsequent drop in value, but it is relevant to both whether the statement was material and whether a material adverse event occurred in *KLP's reasonable good faith opinion*. (ECF No. 53 at 4.)

[3] Sassani has argued that if the Court finds that no disputed material facts exist it should defer consideration of KLP's motion under Fed. R. Civ. P. 56(d). (*See* ECF Nos. 47 at 23–24;

Furthermore, KLP submitted along with its reply brief two new evidentiary affidavits (ECF Nos. 53-5, 53-15), seventeen new exhibits, and a "Response to Defendant's Local Rule 56(a)(2) Statement of Additional Material Facts and KLP's Additional Material Facts" (ECF No. 53-21.) As a threshold matter, although KLP cites L.R. 56(a)1 and 56(a)3, no provisions of the Local Rules authorize a movant on summary judgment to reply to the non-movant's "Additional Material Facts," to set forth its own Additional Material Facts, or to submit new evidence into the summary judgment record at the reply stage. *See* D. Conn. L.R. 56(a)1, 2(i)–(ii) (authorizing the movant to file a L.R. 56(a)1 statement and the non-movant to file both a response and any additional material facts under L.R. 56(a)2). The Court has "broad discretion . . . to rely on evidence submitted with the reply papers." *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009). I note that KLP moved for summary judgment over two months before the close of discovery, and according to Sassani's new counsel, no discovery had been taken. (ECF No. 48 at ¶ 21.) I also note that the new evidence submitted with the reply appears to have been available to KLP when it filed its original motion for summary judgment, and rather than rebut new or unexpected arguments made in opposition, to relate to the same issues briefed in the original motion. Given that none of KLP's evidence on reply was previously produced to Sassani, I conclude that Sassani would be surprised by its submission and, given the evidence Sassani submitted in opposition, may be able to rebut this evidence notwithstanding his lack of

---

ECF No. 48.) In light of my conclusion that material disputed facts exist and that KLP is entitled to judgment as a matter of law on one of Sassani's counterclaims, and in light of Sassani's delays in this case, I decline to exercise my discretion under the rule to defer consideration of the motion and reopen discovery. *See also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 928 (2d Cir. 1985) ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.").

motion for a surreply.[4,5] Accordingly, I am not inclined to consider this evidence. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (considering surprise to the opposing party, whether the non-movant moved for surreply, and whether the non-movant would have contrary evidence if given an opportunity to proffer it in deciding whether to consider evidence submitted on reply). In any event, KLP's additional evidence actually confirms the existence of genuinely disputed material facts on the ARR issue, including: what portion Zozi's subscription fees made up of total revenue (ECF No 53-21 at 3); whether the revenue figure in Sassani's March 31, 2016 email was supplied by Woo (*id.* at 3–4, 5); who made the decision to waive subscription fees, for what duration, and what impact they had on revenue (*id.* at 4); and whether the calculation of ARR in the March 31, 2016 email actually includes waived fees (*id.* at 5). Thus, denial of summary judgment is appropriate regardless of whether these additional materials are considered.

2. *Counterclaims*

KLP also argues that it is entitled to summary judgment on Sassani's various counterclaims against it. As an initial matter, I reject KLP's argument that Sassani's counterclaims are legally insufficient because they are based on events occurring after the Note was executed, as the non-binding case KLP relies on, *Norwich Sav. Soc. v. Hunter*, states that "[e]vents occurring post-

---

[4] This is especially true of the "Additional Material Facts" submitted by KLP, which assert that the "Lux Shares were material to KLP's decision to make the $5.7 million loan" and that "Sassani acknowledged that Waived Fees were significant and resisted reversing them." (ECF No. 53-21 at 8 ¶¶ 1–2.) Even if I could consider this evidence, it likewise would not eliminate the genuine dispute over whether the Lux shares were in fact material to KLP's decision to make the loan (*see* ECF No. 50, Sassani Decl. at ¶ 33)—at least without some opportunity to test the assertions made in the Brencher Declaration—or whether the waived fees had a significant effect on Zozi's total revenue. (*See* Def.'s L.R. 56(a)2 Stmt. at 17 ¶ 14.)

[5] This is a rare instance in which the undersigned might have allowed a surreply had Sassani sought one.

default and during the course of litigation cannot form the basis of an *affirmative defense* to foreclosure" and not that any *counterclaims* must be based entirely on pre-execution conduct. No. 108808, 1996 WL 218711, at *4 (Conn. Super. Ct. Apr. 2, 1996). In any event, I likewise conclude that KLP is not entitled to summary judgment on the following counterclaims for the reasons set forth below:

- **Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two):** Sassani alleges that KLP violated the covenant of good faith and fair dealing by terminating his employment to trigger a default under the Note and seize his collateral in bad faith. (ECF No. 32 at ¶¶ 92–101.) The above disputed facts concerning whether Sassani in fact breached the Note preclude summary judgment on this count.

- **Tortious Interference with Contractual Relations (Count Three):** Sassani alleges that KLP tortiously interfered with Sassani's employment agreement with Zozi by, among other things, effecting his termination, misrepresenting his performance under the agreement, and denying Sassani appropriate medical leave. (ECF No. 32 at ¶¶ 103–111.) Contrary to KLP's argument, Sassani has asserted facts demonstrating that the interference was "wrongful by some measure beyond the fact of the interference itself," *Blake v. Levy*, 191 Conn. 257, 262 (1983) (citation omitted), specifically that KLP terminated Sassani to trigger an event of default in order to seize his Zozi common stock and sell Zozi to a competitor. (*See* Def.'s L.R. 56(a)2 Stmt. at ¶ 20–21; ECF No. 50, Sassani Decl. at ¶¶ 41–51.)

- **Breach of the Amended Voting Agreement (Count Five):** Sassani alleges that KLP breached an amended voting agreement by selling Zozi without his approval under the agreement. (ECF No. 32 at ¶¶ 116–123.) A genuine dispute of material fact exists over whether Zozi's licensing of its platform to Peek Travel, Inc. constitutes a sale and thus, whether KLP breached the amended voting agreement by selling Zozi without Sassani's approval. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 27; Def.'s L.R. 56(a)2 Stmt. at 12.)

- **Violation of the Uniform Commercial Code (Count Six):** Sassani alleges that KLP violated the UCC by not releasing its lien on the Lux shares pledged as Collateral. (ECF No. 32 at ¶¶ 124–127.) Because, as discussed above, there are genuinely disputed material facts concerning whether Sassani breached the note, KLP is not entitled to summary judgment on Sassani's counterclaim concerning its interest in the pledged Lux shares. (ECF No. 39 at 13; ECF No. 47 at 23; ECF No. 53 at 10.)

Nonetheless, I conclude that KLP is entitled to summary judgment on one of Sassani's counterclaim—Count Four for breach of fiduciary duty. (*See* ECF No. 32 at ¶¶ 112–115.) Sassani alleges that, as a result of KLP's pretextual termination of Sassani to trigger an event of default,

seize his shares, and sell Zozi, KLP breached its fiduciary duty to Sassani by advancing its own interests to the detriment of Sassani. (*Id.*) It is true that the parties dispute whether KLP was in fact the majority or controlling owner of Zozi. (Pl.'s L.R. 56(a)1 Stmt. at ¶ 26; Def.'s L.R. 56(a)2 Stmt. at 12; *see also* ECF No. 50 Sassani Decl. at ¶ 8). However, even if KLP were the majority shareholder, the basis for Sassani's claim is his termination from Zozi. As KLP correctly argues, Connecticut does not allow causes of actions for breach of fiduciary duty based on the termination of a minority shareholder. *See Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 384 (D. Conn. 2012) ("Connecticut courts have routinely held that the cause of action for breach of the fiduciary duty owed by majority shareholders to a minority shareholder does not extend to claims based on the termination of the minority shareholder.") (citing *Hackett v. Marquardt & Roche/Meditz & Hackett, Inc.*, No. X02cv990166881S, 2002 WL 31304216, at *3 (Conn. Super. Sept. 17, 2002)). Sassani has not presented any theory under which this claim survives. (*See* ECF No. 47 at 22–23.)[6] Accordingly, KLP is entitled to judgment as a matter of law on Sassani's breach of fiduciary duty counterclaim.

Finally, on Count One, Sassani seeks a declaration that, among other things, no Default occurred under the Note. (ECF No. 32 at ¶¶ 86–91.) Although the arguments KLP makes in favor of summary judgment on this count are unavailing, the relief sought appears to be duplicative of KLP's breach of note action. *See, e.g., Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017). Therefore, within 14 days of this decision, Sassani is ordered to show cause why his counterclaim for declaratory relief should not be dismissed.

---

[6] I note that the parties have briefed this issue and all other issues here under Connecticut law. I therefore assume that Connecticut law applies.

**IV. Conclusion**

For the foregoing reasons, KLP's motion for default judgment and/or summary judgment (ECF No. 39) is GRANTED in part and DENIED in part. KLP's motion for default judgment is denied. KLP is entitled to judgment in its favor on Sassani's breach of fiduciary duty counterclaim. KLP is not entitled to summary judgment on KLP's breach of note claim or Sassani's remaining counterclaims. Sassani is ordered to show cause within 14 days of this decision why his declaratory judgment counterclaim should not be dismissed.

Finally, because it appears that Sassani did not act reasonably promptly in securing substitute counsel or seek more time from the Court before doing so, but instead filed an opposition brief *pro se*, thereby prompting KLP to file a reply brief, it appears that KLP has been prejudiced by Sassani's actions. Specifically, Sassani secured new counsel several months late, the Court permitted new counsel to file an additional brief out of time, and KLP was required to file a second reply. It thus appears that KLP has had to incur unnecessary expense and delay. Sassani is thus ordered to show cause within 14 days why he should not bear the reasonable costs associated with KLP's first reply brief.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 19, 2017